Our final case of the day is Kelso v. Quintana. Mr. Tolliver. Good morning, Your Honor, and may it please the Court. My name is Terry Tolliver, and I'm here today representing Christopher Kelso. We're here today to ask that this Court advise the District Court to apply the law of the Circuit of Incarceration to this particular case, and the reason for that is that, at least in this particular case, the law of the... I must say, counsel, I don't even understand the concept of the law of the circuit. We're supposed to be applying the law of the United States, right, as in the statute books, as construed by the Supreme Court. If judges disagree about what that law is, aren't we still trying to apply the law of the United States? It's not like the law of Illinois or the law of Indiana. It's the law of the United States. I certainly understand that position, Your Honor. The issue here is that the District Court in the Southern District of Indiana is bound by the decisions of this Court. And even more by the decisions of the Supreme Court. But my question is, why shouldn't we be doing our best to apply the law of the United States? And if some other circuit disagrees with us about what the law of the United States is, that's fine, but it's not the law of the 7th Circuit or the law of the 6th Circuit, or in this case, the law of the 11th Circuit about what this Alabama statute is and whether it qualifies as a prior offense. Your Honor, here... So in other words, yeah, I mean, it's... This is not a choice of law problem. It's not like the case we heard earlier where maybe it was the law of Illinois or maybe it was the law of Virginia. Those are two separate sovereigns and they have their own laws. So there's that aspect to it. I'm not that sure if it turns out that the 7th Circuit has come up with the better approach to these issues, that that's going to help you that much anyway. So maybe it would be time-saving for us to jump right there. Why, under the approach this Court has taken, would Mr. Kelso prevail? Based upon the categorical approach, Your Honor, the conviction, the Alabama convictions of which he was previously convicted of, would not count toward the enhancement, which resulted in a life sentence being imposed upon Mr. Kelso. Can you help me on this? So you argue that there was a new door effectively opened on the claim because of Mathis, correct? Correct. Okay. The U.S. Supreme Court decided Mathis in June of 2016. Okay, you can take my word at that. All right? The 2255 petition of your client was filed in September of 13, but it was not denied until November of 16. Okay? Wasn't Mathis, therefore, available to him? Couldn't he, as the 2255 petition was pending, have gone to the District Court, whereas 2255 was filed, and said, Mathis is a game-changer in my view? And I hereby supplement my 2255 petition in the following way, based upon Mathis. What prevented that? Your Honor, and I don't know the answer to that question. I can only assume that because this, I believe, was a pro se petition. Yeah, it was. I just don't see how Mathis was unavailable. Right? You take our test. How was Mathis unavailable? Again, Your Honor, I think because it was a pro se petition, that's the only thing I It was unavailable to him just because Mr. Kelso would have been unaware of how to notify the court of that decision. Okay. Forget that for a minute. All right? How does Mathis have anything to do with this? Your Honor, Mathis applies just because it, well, and the District Court agreed. Right. So take the three Alabama convictions, right? Yes. You know what I'm talking about? Yep. Okay. The three that he has. Okay. What you, the issue is, are they qualifying for purposes of the 841 enhancement after the 851 felony information is filed? Right? That's the issue? Yes. Okay. Why do you have to get into Mathis in any way to resolve the merits of his contention? Well, I think the reason why we went in through Mathis is to get the issue, is to make the argument before the court. I certainly see where you're The argument is that they don't qualify, right? Correct. Okay. But nothing about the substance of that argument has anything to do with the categorical approach, the modified categorical approach, divisible, indivisible statutes, that whole swamp. Right? Nothing has anything to do with that. Ultimately, just whether it qualifies. Yeah, exactly. And he can make an argument, and he'll either win that or he'll lose it, but it doesn't depend upon Mathis. That's what I struggle with. I think Mathis was available, so I think he's got a threshold issue. But if you forget that Then his argument would still stand based upon that the three prior convictions do not qualify. Yeah, and I The purpose of the enhancement. Right. He can make the argument. I don't know what he, I'm not sure I know what the substance of his contention is as to why they don't qualify, because it looks, from what's been presented to us, it looks like he has three prior Alabama state, it might be, is it crack or cocaine, possession of, possession felonies. Your Honor, the argument that we're putting forth today is that under Seventh Circuit law that the convictions would not qualify because the state, the state law differs from the federal law, and that includes isomers. In order to determine that, you would go to the Alabama schedule. And where's that at in your brief? It is It's not in the opening brief. There's a little mention of it in the reply brief. Yes. But, of course, we usually say that arguments not made in the opening brief are forfeited. Yeah, you make that Sometimes we even say they're waived. Yeah, you make it on page four, but I don't, yeah. All right. But, of course, your argument ultimately rests not on Mathis, but on Routh. At the time of the conviction and of the 2255 proceeding, was there any authority contrary to Routh? I don't believe so, Your Honor. No. Well, that makes it very hard to see how there was any problem with raising a Routh argument on direct appeal, let alone on a 2255. I understand, Your Honor. And, Your Honor, I'm happy to continue to answer questions. We did request three minutes for rebuttal. Yes, but while we're asking questions, you should be answering. And I've got, in addition to that observation about Routh, I've got a question about the Supreme Court, which has granted the petition for certiorari in Jones against Hendricks, which raises the question when it is appropriate to use 2241 in a situation in which, at the time of the 2255, there was contrary circuit-level precedent, which there wasn't in this case. Do you think we should be waiting in this case until the Supreme Court decides Jones? That is certainly one way of approaching it, and I think that would ensure our general argument is consistency, and that is one way of ensuring consistency, is that all courts would apply to the Supreme Court. No, I'm really asking two things in that question. One is, do you think the United States has 7th Circuit's Davenport decision is correct? But the United States says it's not contesting Davenport in this case, so I'm asking whether you think that is a forfeiture of the United States, so it can't rely on Jones. And the other question I'm asking you built into this is whether you think it matters that in this case there was no contrary circuit-level precedent at the time of the direct appeal or of the 2255 petition. Jones may decide whether that matters. That's what I'm asking. So the first question about whether the United States has waived that argument, I think that's generally correct, that if it's not addressed, that it's waived. However, if the Supreme Court issues an intervening decision, that may change things, and the United States may take a different position. As for the second question, when there is no contrary argument, I think that's just a complicated question, given the facts of this particular case. Again, we were looking at a pro se filing. The arguments that were raised were rather complicated, involving the chemistry, and it would be difficult for somebody to understand. I understand that the argument is perhaps beyond the skills of a pro se litigant, but that's not the question. The question under the saving clause of 2255 is whether there's some statutory inadequacy, not whether Kelso is a lawyer. I understand, Your Honor. Okay. I'll give you one minute for rebuttal, because I exhausted your time at the end. Thank you, Your Honor. All right. Mr. Reitz. May it please the Court, Brian Reitz for the United States. Mr. Kelso has not shown a structural problem, for three reasons that the Court has pointed to. First of all, Mathis and— Okay. Let me begin where I finished with Mr. Tolliver. Has the United States forfeited any potential reliance on Jones? It has been the United States' practice to accept the circuit's law, defining what the savings clause is. So you just argue whatever the Court of Appeals said, and not what the United States of America thinks is right. That doesn't sound like the normal litigating position of the Department of Justice. That has been the Department's litigating position. In our district court filings, we usually footnote and say, you know, that the United States' position is MacArthur and Earprost. It is certainly not the position taken by the Solicitor General in Jones, who defended the Eighth Circuit's decision, and the Eighth Circuit held that Davenport was not correct. I— The Solicitor General defends the Eighth Circuit. I think the Solicitor General's position in Jones is somewhat—is undetermined yet. I mean, there it's— But they have filed a brief in opposition, saying the Eighth Circuit got this right. They may change their mind. Who knows? Yes. I think that's our point. We don't really know. But the Department has instructed attorneys and districts to just say and rely on their own circuit standard for defining the Savings Clause. So that's what we've done here. We've relied on Davenport. Is that because it's largely not outcome determinative? I can't believe that would be the position of the United States if it was really causing all sorts of grants to happen all over. I think Your Honor's right in that it is difficult to win 2241s. I'm not sure it is—I think it would be outcome determinative in a number of cases. Certainly. Yeah, I think it would be. C. Webster, yes. And Jones, for example. Jones, yes. But I honestly, I don't know the rationale underlying the Department's advice to districts. But what I can say here is that I think under any—even beyond the Davenport or a different approach, even at the very end, as Your Honor pointed out, Mr. Kelso can't show that his convictions don't qualify under a categorical or different So this all gets to whether Alabama's definition of controlled substance is broader in some meaningful way than the federal definition? I don't want to say it all gets there because we think that Mr. Kelso flunks the Davenport factors for other reasons as well because Mathis was available and— I'm compartmentalizing. If we compartmentalize, then yes, the third Davenport problem, the miscarriage of justice, is based on whether Alabama cocaine convictions qualify under 802.44 at the end, and they categorically do. Mr. Kelso, I guess, is raising an isomer argument, but the Alabama statute doesn't include the term isomer for its definition. Right. I think he's looking at the wrong part of— Yes. You didn't raise that in your red brief, that issue at all, right? We raised the isomer. Yes. Yes. That's one of the last things we say in the miscarriage of justice portion. We argued against what Mr. Kelso—here, I can point to the pages. I see it. I got it. 17. So that's on page 17 and 18. 17, yeah. Yeah. We responded to the arguments that Mr. Kelso made. What about the point I was raising about Mathis was—if this is rooted in Mathis, Mathis was available. I think that's right. I think the United States missed that, but yes, it unequivocally was available, and the spinoff on that, there was no case law foreclosing a Ruth or De La Torre-type argument at that time either. Mr. Kelso's argument is based on Taylor, not on Mathis, which is another reason there's no structural problem with 2255 to raise this claim. We think the court should affirm the district court under Davenport or whatever happens in Jones v. Hendricks again. So you don't think there's any need to hold for Jones? I don't think so. I mean, we wouldn't necessarily oppose that. It might be, you know, safety is the better part. Although I bet your preference order is win, hold, lose in that order. Correct. Correct. I'm not surprising anyone by saying that, but yes. So we would have figured that out before you stood up. Thank you. Okay. Thank you. Mr. Tolliver. Thank you, Your Honor. Just to be clear, our preference order would also be win, hold, or lose. Yes. So we will start with that. Again, our position here is that in this particular case, the district court ruled—determined the Sixth Circuit's law when the Sixth Circuit's law is not clear. And that's really the fundamental issue here is that it's not an application of the law, but here it's a determination of the law when the Sixth Circuit itself has not determined what the law is. And it's for those reasons that we would ask that this court reverse the denial of the 2241 and remand it for a decision consistent with the Seventh Circuit precedent. Thank you. Thank you very much. The case is taken under advisement and the court will be in recess.